UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| COLON BUSBY and MELISSA BUSBY, <br><br> Plaintiffs, <br><br> vs. <br><br> MENARD, INC., <br><br> Defendant. | 4:23-CV-04117-KES <br><br> ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Plaintiffs, Colon Busby (Busby) and Melissa Busby (collectively "the Busbys"), filed a complaint against defendant, Menard, Inc., alleging claims of negligence and loss of consortium after a stack of insulation fell on Colon Busby at a Menards retail store. Docket 1. Now, Menards moves for summary judgment on the Busbys' claims for negligence and loss of consortium. Docket 32. The Busbys oppose the motion for summary judgment. Docket 42. For the reasons stated below, the court denies Menard's motion for summary judgment.

## BACKGROUND

When considering a motion for summary judgment, the court generally views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Here, where a fact is admitted or

undisputed, the court cites only the source in which it is first presented. The undisputed material facts relevant to Menard's motion for summary judgment are as follows.

## I.      The Incident

On March 10, 2023, Colon Busby arrived at the Menards location at 3001 South Shirley Avenue (Sioux Falls West Menards) to pick up insulation. Docket 33 ¶ 1. Busby, who works as a professional contractor, has operated a residential and commercial general contracting business since 2000. *Id.* ¶ 2.

Upon arriving at the Sioux Falls West Menards, Busby drove up to the insulation aisle.[1] Docket 34-1 at 6. Busby described the stacks of insulation as follows:

> [t]here were three, what we'll call packages, of insulation right here. There's a wall right here. Then off to the side over here there was, I believe, two more packages on the ground, but they were a different kind. And then in the back corner over here there was one bundle standing up and down. And then behind the three bundles that I ended up grabbing, there was a stack probably about 30-foot tall of insulation.

*Id.* at 7. Busby explained that each individual package or bat of insulation was approximately 5 feet long and 2 feet wide and that a bundle of insulation consisted of four individual packages or bats of insulation. *Id.* at 8. Busby

---

[1] Menard's stores keep their insulation inventory in an outdoor covered warehouse, which is in a larger storage area referred to as the "yard." Docket 33 ¶ 4. Menard's insulation products are stored in open-front bays, and each bay is supported by a rear wall and two side racks. *Id.* Additionally, Menard's "yard" is self-service, meaning that its products, including its insulation products, can be touched and manipulated by its customers. *Id.* ¶ 5.

estimated that the packages of insulation weighed approximately 200-300 pounds. Docket 33 ¶ 11.

Busby explained that when he first walked up to the insulation, he noted that the stacks "looked very uneven" by which he meant that "the first stack, and then the next stack with the pallet on it looked like it was kind of a little bit off. The next one up looked a little bit not right. They didn't look even, like they were stacked nice and flat." Docket 40 ¶ 8; *see also* Docket 34-1 at 8. Busby also testified that the stack of insulation was stacked differently because there were pallets in between bundles of insulation. Docket 34-1 at 8. When asked whether he believed the insulation could fall over, Busby explained "I really did not have that on my mind. I had it on my mind to get the insulation in my trailer and get back to the job and get it done, so I really didn't have [it] on my mind - - well, it just looked odd and I didn't really pay much attention to it after that." Docket 40 ¶ 9; Docket 34-1 at 8-9. After making these observations, Busby was able to load three packages and two bundles of insulation into his trailer. Docket 33 ¶ 12. Busby testified that after moving this insulation to his trailer, he did not notice whether the stack looked any different. *See* Docket 34-1 at 9 (Busby testifying that "I really wasn't paying attention to it [the big stack]. I wasn't worried about it.").

After moving the insulation into his trailer, Busby received a phone call and returned to his pickup to take the call. Docket 33 ¶ 13. While Busby was on the phone, a Menards employee operating a forklift drove by him. Docket 33 ¶ 14. Busby admitted seeing the employee, but explained that he did not stop

the employee because he was "pretty concentrated on my phone. You could come by me, you could do anything and I am going to ignore you." Docket 40 ¶ 15; *see also* Docket 34-1 at 11. Busby also explained that he did not stop the employee to ask for help because "it would take me more time to convince somebody to come help me as it would be for me to load it myself." Docket 34-1 at 11; *see also id.* ("So the guy riding around on the forklift, that's probably his best talent he has. He's not going to be willing to give me any assistance at all."). Busby stated that while he had requested assistance from Menard's employees in the past, he didn't feel their assistance was helpful. *See* Docket 43-1 at 14-15 ("In my past instances going to Menards, trying to get help there is like pulling teeth. And when you do find help there, they're not very good help.").

After his phone call, Busby returned to the stack of insulation because he needed one more bundle. Docket 33 ¶ 17; Docket 34-1 at 9. As Busby was grabbing the last bundle in front of the tall stack of insulation, the stack fell on top of him.[2] Docket 33 ¶ 18; *see also* Docket 34-1 at 10. Busby denied touching the stack before it fell.[3] Docket 41 ¶ 3; *see also* Docket 43-1 at 11. Busby described the events as follows:

---

[2] Both parties agree that the stack of insulation that fell upon Busby was not as high as the side racks. Docket 33 ¶ 25; Docket 40 ¶ 25. Additionally, neither party has information as to who stacked the insulation or when the insulation that fell was stacked. Docket 33 ¶ 20; Docket 40 ¶ 20.

[3] Menards states that "[a]s Busby was pulling insulation from the bay, the tall stack of insulation fell on him spontaneously without his touching it." Docket 33 ¶ 18. For purposes of its summary judgment motion, Menards does not dispute this fact. *Id.* at 4 n.2. The Busbys take issue with the use of the word

> I looked at the big stack and I was [thinking], I'm not getting in there. And then I noticed the one in the corner, and that was the one I could use, so I reached down and I grabbed the last bundle on the floor, and I started to pull it to the trailer and that's the last thing I remember.

Docket 34-1 at 9; *see also* Docket 41 ¶ 1. Busby stated that he did not see the insulation fall and was unable to brace himself or move out of the way of the falling insulation. Docket 41 ¶ 2; *see also* Docket 43-1 at 16. When asked why he thought the tall stack fell over, Busby stated "I have no idea [why it fell over]. I didn't touch it. I didn't do nothing to it. I have no idea why that pallet – or stack fell." Docket 34-1 at 10. Instead, Busby assumed that stack must have fallen because Menards failed to properly stack the insulation. *Id.* at 10-11; Docket 33 ¶ 19; Docket 40 ¶ 19.

After being hit by the insulation, Busby stated that the next thing he remembered was "severe pain in [his] left arm. And then when I stood up I had severe pain in my left hip that was really bad. I couldn't really feel my arm. And the pain in my hip was like somebody driving a knife into it." Docket 43-1 at 16. After seeking help from Menard's employees at the contractor's desk, Busby reports that two employees told him that he needed to go to the front of the store for assistance and then walked away from him. *Id.* at 17-18. After Busby made it to the front of the store, he reported that another Menards employee was equally unhelpful. *Id.* Busby eventually had a Menards employee load the

---

"spontaneously" and argue that the insulation fell due to Menard's failure to properly stack and secure the insulation and from its failure to monitor and keep its premises in a safe condition. Docket 40 ¶ 18.

last bundle of insulation into his truck before he left the Sioux Falls West Menards. *See id.* at 19; *see also* Docket 35-2 at 26:38-27:35.

## II. Menard's Signage, Insulation Stacking Policies, and Past Incidents of Falling Product

The yard at the Sioux Falls West Menards includes a sign at its entrance, notifying customers that the yard is self-service. Docket 33 ¶ 6. The sign also states that "Menards is happy to provide assistance upon your request" and that "the outside yard is exposed to elements and Menards is not responsible for naturally occurring risks, including injury or damage caused by rain, ice, snow, or wind." *Id.* The Sioux Falls West Menards also has a sign in the insulation aisle of its warehouse that warns customers "DO NOT – Pull on Bundles" and requests that "If you need assistance please ask!" *Id.* ¶ 7. During his deposition testimony, Busby confirmed that he had been to the Sioux Falls West Menards many times. *See* Docket 43-1 at 5 (Busby testifying that "I've probably been to this store - - if I told you 10,000 times, that probably wouldn't be enough"). Busby also confirmed that he was aware of and understood the signs at the entrance of and in the insulation aisle at the Sioux Falls West Menards. Docket 33 ¶¶ 6-7; *see also* Docket 34-1 at 5-7.

The only written policy that Menards provides its employees regarding how to stack insulation is Policy No. 99. Docket 41 ¶ 9; *see also* Docket 43-6. Menard's policy requires employees to stack insulation either by forklift or by hand. Docket 33 ¶¶ 21-22. A Menard's employee who wishes to operate a forklift must also undergo training to verify that the employee can properly operate the forklift and handle the various materials, such as insulation, that

6

Menards keeps in its yard. *Id.* ¶ 23. Menard's policy also prohibits stacking insulation higher than the side racks on each side of the insulation bay and requires that bundles of insulation are stacked so that the rounded edges face the sides of the bay. *Id.* ¶¶ 24, 26.

Menard's employees also confirmed that the stack of insulation that fell upon Busby was free-standing and was not physically restrained or secured by safety devices, such as security bars, fencing, safety ties, or shelf extenders. Docket 41 ¶¶ 5, 7; *see also* Docket 43-5 at 6, 14. Additionally, Menard's stacking policy does not specify how many batts of insulation can be stacked on a pallet. Docket 41 ¶¶ 8-9; Docket 43-5 at 7 (Wall testifying that it is up to the employee's judgment to determine how many bundles of insulation go on a pallet). Menard's employees were told to "just stack it safe." Docket 41 ¶ 8; Docket 43-4 at 16. Menard's stacking policy also provides that batts of insulation should be "[a]ble to stand on itself . . . or support itself." Docket 41 ¶ 17; *see also* Docket 43-5 at 14; Docket 43-4 at 13 (McCallon testifying that the stacks of batt insulation should be "straight up and down").

Some employees at the Sioux Falls West Menards reported a few other incidents of falling products. For example, Chad Wall, the General Manager at the Sioux Falls West Menards, recalled four incidents where a product that was improperly stacked fell over. Docket 40 ¶ 27; Docket 43-5 at 9. Wall attributed these falls to "poor forklift operation," and noted that Busby's case is the only one he could recall where a customer was injured by falling product. Docket 43-5 at 9. In comparison, the Outside Yard Manager at the Sioux Falls West

Menards, Scott McCallon, was unaware of any incidents where a stack of insulation fell forward without the use of external force. Docket 33 ¶ 28. Chett Dauwen, a 9-year employee with Menards, stated that the only times he could remember product falling over was when it had been jostled or bumped by an individual or forklift or where it had been shifted by a gust of wind. Docket 40 ¶ 29; *see also* Docket 43-3 at 6.

The employees at Menards indicated that customers are encouraged to load their own product from the yard. Docket 41 ¶ 21; *see also* Docket 43-5 at 4, 11, 16. The employees also reported that customers at Menards jostle, tug, and move product around in the yard "all the time." Docket 41 ¶ 10; *see also* Docket 43-5 at 5. Menards does not have a policy specifying how often its employees must check products in the yard and it does not have a policy that requires its employees to reorganize and fix products that have been moved by its customers. Docket 41 ¶¶ 11-12.

## LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party may satisfy this burden by presenting evidence that there is no genuine dispute of material fact or by showing that the nonmoving party has failed to present evidence supporting an element of its claim on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party must inform the court of the basis for its motion and identify the portions of

8

the record that show there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). Summary judgment "must be denied if on the record then before it the court determines that there will be sufficient evidence for a jury to return a verdict in favor of the nonmoving party." *Krenik*, 47 F.3d at 957. Summary judgment is precluded if there is a genuine dispute of fact that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## DISCUSSION

"Negligence is the breach of a duty owed to another, the proximate cause of which results in an injury." *Janis v. Nash Finch Co.*, 780 N.W.2d 497, 500 (S.D. 2010) (internal quotation marks omitted). To succeed on a claim of negligence under South Dakota law,[4] the Busbys must "prove duty, breach of that duty, proximate and factual causation, and actual injury." *Hanson v. Big*

---

[4] Because the Busbys' claim for loss of consortium is derivative of their negligence claim, *see Selchert v. Lien*, 371 N.W.2d 791, 794 (S.D. 1985) ("[A] cause of action for the loss of spousal consortium is derivative in nature . . . [and] its validity depends upon the validity of the main cause of action"); *Hansen v. Shields*, 2020 WL 4346961, at *5 (D.S.D. July 29, 2020), and the parties only discuss the Busbys' negligence claim, *see* Docket 38; Docket 40, the court need only address whether a genuine dispute of material fact exists regarding the Busbys' negligence claim.

*Stone Therapies, Inc.*, 916 N.W.2d 151, 158 (S.D. 2018). "Whether the defendant breached that duty and, in doing so, caused harm to the plaintiff are questions of fact typically reserved for the jury." *Long v. Smithfield Packaged Meats Corp.*, 736 F. Supp. 3d 681, 695 (D.S.D. 2024); *see also Stone v. Von Eye Farms*, 741 N.W.2d 767, 770 (S.D. 2007) ("This Court has repeatedly stated that questions of negligence, contributory negligence and assumption of the risk are for the jury in all but the rarest of cases so long as there is evidence to support the issues."); *Robbins v. Buntrock*, 550 N.W.2d 422, 425 (S.D. 1996) ("Resolving negligence questions is an elemental jury function."). But because "the existence of a duty is a question of law to be determined by the court," *Janis*, 780 N.W.2d at 500, Menards is entitled to summary judgment "if no duty exists as a matter of law," *Bordeaux v. Shannon Cnty. Schs.*, 707 N.W.2d 123, 126 (S.D. 2005) (citation omitted); *see also Estate of Shuck v. Perkins Cnty.*, 577 N.W.2d 584, 586 (S.D. 1998) ("While negligence actions are generally not suitable for summary judgment, such a result is proper when the duty question is resolved in defendant's favor.").

The South Dakota Supreme Court has found that "[a]s a general rule, the possessor of land owes an invitee or business visitor the duty of exercising reasonable or ordinary care for the benefit of the invitee's safety, and the possessor is liable for the breach of such duty." *Janis*, 780 N.W.2d at 501 (internal quotation marks omitted). The landowner's duty to exercise reasonable or ordinary care "is essentially two-fold." *Id.* First, the landowner owes the invitee the duty "to warn of concealed, dangerous conditions known to

10

the landowner." *Id.* (citation omitted). Second, the landowner owes the invitee

the duty "to use ordinary care in active operations on the property." *Id.* These

duties are "predicated upon a landowner's superior knowledge concerning the

dangers of his property." *Id.* at 502. But a landowner need only take measures

to keep an invitee safe from "[a] foreseeable risk of harm . . . that would be

anticipated by a reasonable person." *Id.* at 502-03.

## I.     Duty of Care

### A.     Whether the Risk of Harm was Foreseeable

Here, Menards does not dispute Busby's categorization as an invitee.

Docket 38 at 7. Instead, Menards argues that it did not owe Busby a duty

because Menards "could not foresee that a stack of insulation would

spontaneously fall forward and injure a customer."[5] *Id.* at 11. " '[F]oreseeability

in defining the boundaries of a duty is always a question of law' and is

examined at the time the act or omission occurred." *Zerfas v. AMCO Ins. Co.*,

873 N.W.2d 65, 70 (S.D. 2015) (quoting *Johnson v. Hayman & Assocs., Inc.*,

867 N.W.2d 698, 702 (S.D. 2015)). Thus, this court must decide whether

---

[5] Menards also argues that the Busbys cannot rely upon the doctrine of *res ipsa loquitor* to establish their negligence claim. Docket 38 at 6-7. In their response, the Busbys argue that they have "never alleged negligence based on a *res ipsa loquitor* theory." Docket 42 at 1. Instead, the Busbys seek to establish their negligence claim on the grounds that Menards breached its duties by "failing to exercise reasonable care in stacking its pallets, failing to properly secure its pallets, failing to properly maintain its pallets, and failing to maintain its facility in a safe and reasonable manner." *Id.* at 1, 7-8. Because the Busbys do not seek to establish their negligence claim under a *res ipsa loquitor* theory, the court will not address these arguments in deciding Menard's motion for summary judgment.

Menard's method of stacking the insulation that fell created a foreseeable risk of injury "such that the law will impose upon [Menards] a legal obligation of reasonable conduct for the benefit of [Busby]." *Millea v. Erickson*, 849 N.W.2d 272, 276 (S.D. 2014). The determination of foreseeability "is dependent upon all the surrounding facts and circumstances" leading up to the insulation stack falling over. *See Janis*, 780 N.W.2d at 504.

The circumstances of this case demonstrate that the risk of harm was foreseeable. Menards Policy No. 99's prohibition of "[u]neven stacking or stacking which could collapse" indicates Menard's awareness that improperly stacking insulation could cause the stack to fall and injure a customer. Docket 43-6. Menard's employees also confirmed the possibility that improperly stacked insulation could cause product to tip or fall. *See* Docket 43-3 at 6-7, 9 ("If [products are] not stacked properly or stored properly, accidents can happen."); Docket 43-4 at 7-8; Docket 43-5 at 9.

Menard's employees further acknowledged that it is common for customers to jostle, tug, pull, and move product in the self-service yard. *See* Docket 43-3 at 7-8; Docket 43-5 at 5 (stating that "people jostle stuff around all the time"). Menards knows that its customers may touch, move, and manipulate products, as indicated by the nature of its self-service yard and its posted signage. Docket 33 ¶¶ 5-7 (noting that Menard's signs request that customers not "[p]ull on [b]undles"); *see also* Docket 43-3 at 7-8 (confirming that it is "encouraged by Menards" to have customers move and load their own product). Because Menards had notice that its customers may move and

12

displace its stacks of products, there is a foreseeable risk of harm inherent in the operation of its self-service yard. Thus, Menard's duty of care as a landowner requires Menards to use reasonable care in ensuring that its products are properly stacked to avoid the risk of harm that improperly stacked or manipulated stacks of insulation poses to its customers. *See, e.g., Martin v. Wal-Mart Stores, Inc,* 183 F.3d 770, 773-74 (8th Cir. 1999) (interpreting Missouri law to find that operation of a self-service store "creates an affirmative duty to anticipate and, exercising due care, prevent or seek out those dangerous conditions, then protect or warn customers once the particular danger is found").

Further, the mere fact that Menard's employees could not recall a prior incident where "a stack of insulation had . . . spontaneously fallen forward at the store where they worked," Docket 38 at 10, is not dispositive on the question of foreseeability, *see Janis,* 780 N.W.2d at 505 (determining that trial court erred "in allowing the lack of prior similar incidents to be determinative of foreseeability"). Instead, the employees' statements confirm that a stack of insulation could fall if it was improperly stacked by an individual or by forklift or if an external force acts upon the stack of insulation. Docket 43-3 at 6-7; Docket 43-4 at 14 (indicating that a stack of insulation would only fall "if it was disturbed or moved"); Docket 43-5 at 9; *see also Small v. McKennan Hosp.,* 437 N.W.2d 194, 199 (S.D. 1989) ("Prior incidents, whether similar or not, were properly held to constitute evidence of foreseeability" and could "be considered with all the other facts and circumstances relating to the issue."). Thus, it is

foreseeable that if insulation is improperly stacked or if a customer's manipulation of a stack of insulation is not fixed, that stack of insulation may fall, thereby injuring a customer. Thus, the court denies Menard's motion for summary judgment on the grounds that the risk of harm was not foreseeable.

## B.    Whether the Stack of Insulation Constituted an Open and Obvious Condition

Menards also argues that it did not owe Busby a duty because the stack of insulation constituted an open and obvious condition. Docket 38 at 11-13. The Busbys argue that a genuine dispute of material fact exists as to whether Colon Busby appreciated the danger posed by the "uneven" stack. Docket 42 at 12.

"A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Jones v. Karter Plaza Ltd.*, 488 N.W.2d 428, 429-30 (S.D. 1992) (internal quotation marks omitted). Rather than operate as an affirmative defense, the known and obvious exception "disposes of the [land]owner's duties in the first instance." *Mitchell v. Ankney*, 396 N.W.2d 312, 315 (S.D. 1986). South Dakota Pattern Jury Instruction No. 20-90-70 provides:

> In general, an [owner] [possessor] of land is not liable to an invitee for physical harm caused to the invitee by an activity or condition on the land whose danger is known or obvious to the invitee. However, if [the owner] had reason to believe that the condition will harm the invitee despite its obviousness, the [owner] [possessor] has a duty to warn the invitee regarding the condition or to take other reasonable steps to protect the invitee.

14

> The word "known" means that the invitee both knew of the existence of the dangerous condition, and appreciated the probability and gravity of the danger posed by that condition. The word "obvious" means that the condition and the risk would be recognized by a reasonable person in the invitee's position, regardless of whether the invitee subjectively recognized the danger.

S.D. Pattern J. Instr. 20-90-70; *see also Stenholtz v. Modica*, 264 N.W.2d 514, 516-17 (S.D. 1978). "Although the known and obvious exception limits a landowner's duties, whether a risk is in fact known and obvious is a question of fact for the jury." *Smithey v. Stueve Const. Co.*, 2007 WL 172511, at *7 (D.S.D. Jan. 18, 2007); *see also Mitchell*, 396 N.W.2d at 316 (noting factual issues a jury must decide in determining whether the open and obvious exception applies).

Menards points to the Seventh Circuit's holding in *Dunn v. Menard, Inc.*, 880 F.3d 899 (7th Cir. 2018), as persuasive authority. Docket 38 at 13; Docket 44 at 20. There, the plaintiff brought a negligence claim against Menards after a roughly sixteen-foot tall stack of insulation fell on him without him touching the stack. *Dunn*, 880 F.3d at 904. The Seventh Circuit affirmed the district court's grant of summary judgment to Menards, finding that the stack of insulation constituted an open and obvious condition. *Id.* at 908. In so holding, the court reasoned that the plaintiff knew of the condition based on his testimony that the stack was "leaning" and was "not straight." *Id.* at 906-07. The court also reasoned that because the plaintiff "observed the leaning stack for fives minutes *before* attempting to load his van," and warned his son "to be mindful of his surroundings," there was no genuine dispute of material fact that a reasonable person with the plaintiff's knowledge would have fully

15

appreciated the risk of harm. *Id.* at 907-08. As such, the court found that the "leaning stack of insulation constituted an open and obvious condition" because "a reasonably prudent person would not have stood underneath a sixteen-foot stack of 'obvious[ly]' 'unstable' insulation, even if that person ventured to avoid physical contact." *Id.* at 908.

In *Braxton v. Menard Inc.*, 2024 WL 3251377 (N.D. Ill. July 1, 2024), the United States District Court for the Northern District of Illinois denied summary judgment to Menards after finding that there was a genuine dispute of a material fact over whether a stack of doors at a Menard's retail store constituted an open and obvious condition. *Id.* at *4-5. There, the plaintiff walked into a door aisle, where she noted that the doors opposite of where she was looking appeared straighter and that the setup of the doors she was looking at were "weird." *Id.* at *1. Based on the state of the doors, the plaintiff and her grandmother "were aware that it might be risky to touch the doors for fear of them falling." *Id.* While the plaintiff was looking at the doors, another door suddenly fell on her from behind. *Id.* at *2. The court reasoned that while the plaintiff's testimony indicated that she was "aware of the physical condition and even of the risk associated with touching the doors[,]" there was insufficient evidence to demonstrate that the plaintiff "necessarily appreciated the risk that a door could spontaneously fall on her while she was standing in the aisle." *Id.* at *4. In distinguishing the facts from those in *Dunn*, the court noted the differences in testimony as to the state of the hazard's condition, and that the plaintiff "did not have a chance to look around the aisle for very long"

16

before being struck from behind by a door. *Id.* at *5. Thus, the court concluded that there was "less circumstantial evidence in the record for the [c]ourt to conclude, as a matter of law, that a reasonable person would indisputably appreciate the risk posed by the door aisle." *Id.*

Here, there is insufficient evidence in the record to conclude that Busby appreciated—or that a reasonable person necessarily would have appreciated— the risk that the stack of insulation would fall as a matter of law. Busby testified that upon approaching the stack of insulation, he noted that the stack "looked very uneven," "a little bit off," "a little bit not right," and "[t]hey didn't look even, like they were stacked nice and flat." Docket 40 ¶¶ 8-9. When asked whether he thought the insulation could fall over, Busby responded that he "really did not have that on [his] mind." Docket 34-1 at 8. He further testified that after initially noticing the stack's appearance, he "didn't really pay much attention to it" and was not worried about it. Docket 40 ¶ 9; Docket 34-1 at 9. After removing several bundles of insulation, Busby did not inspect the stack to determine whether it had shifted, explaining that he "really wasn't paying attention to it." Docket 34-1 at 9.

Although the plaintiff in *Dunn* and Busby both testified that the stack of insulation appeared "uneven," this alone is insufficient to conclude that the stack of insulation in Busby's case constitutes an open and obvious condition. Unlike the plaintiff in *Dunn*, after pulling up to the insulation aisle, Busby immediately started grabbing packages of insulation to place in his trailer. *See* Docket 35-2 at 00:34-00:48. Busby continued pulling out packages and

17

bundles of insulation to place in his trailer until he received a phone call and returned to his pickup to answer the call. *See id.* at 0:48-3:47. At no point during this time did Busby take the opportunity to engage in a prolonged observation of the state of the tall stack of insulation. *See id.* at 00:34-3:47. After ending his phone call, Busby returned to the stack of insulation to grab the last bundle he needed. *See id.* at 5:29-5:48. Busby again did not take the opportunity to observe the condition of the insulation stack before the stack of insulation fell. *See id.* Like the plaintiff in *Braxton*, Busby did not spend an inordinate amount of time observing the stack of insulation. As such, it is not clear, as a matter of law, that a reasonable person in Busby's position would have appreciated the risk that the stack of insulation would suddenly collapse.

Further, while Busby's subjective perception is not dispositive, his testimony is probative on the issue of how a reasonable person would have viewed the danger. A jury could credit Busby's testimony and conclude that Busby observed an irregular condition without appreciating the risk that the stack would suddenly collapse. Menards, by contrast, argues that the condition was sufficiently apparent that any reasonable person would have recognized the danger. Those competing inferences create a genuine dispute of material fact regarding whether the danger was known or obvious.

That dispute is material because South Dakota law requires appreciation of the danger itself, not merely awareness of the condition giving rise to the danger. See S.D. Pattern J. Instr. 20-90-70; *see also Stenholtz*, 264 N.W.2d at 516-17. Menards argues that Busby's observations establish, as a matter of

18

law, that the danger was known or obvious. Docket 38 at 12-13. The Busbys, however, point to testimony that Busby did not believe the stack would fall and did not appreciate it as presenting a danger. Docket 42 at 12. Because the record supports competing inferences regarding whether the risk was known or obvious, reasonable minds could differ on the issue. Under South Dakota law, that question is therefore one for the jury rather than the court. *See Mitchell*, 396 N.W.2d at 316; *Smithey*, 2007 WL 172511, at *7. Thus, Menard's motion for summary judgment based on the argument that the stack of insulation constituted an open and obvious condition is denied.

**C.      Whether the Busbys are Required to Provide Expert Testimony**

Menards argues that because the Busbys seek to establish negligence based upon Menard's policies regarding stacking and monitoring of its insulation, the Busbys must provide expert testimony to establish duty, breach of duty, and causation. Docket 44 at 16. Menards concludes that because the Busbys have failed to provide such testimony and the deadline to provide this testimony has passed, summary judgment is warranted on the Busbys' claims. *Id.* at 7-14.

At the outset, the court notes that Menards did not raise this argument in its opening brief. *See* Docket 38. The Busbys therefore had no meaningful opportunity to respond before Menards asserted, for the first time in reply, that expert testimony is necessary to establish duty, breach, and causation. While Menard's arguments are nominally responsive to arguments raised in the Busby's brief, they are effectively new arguments that Menards could have—

19

and should have—made in its initial brief. *See* Docket 1 ¶ 13 (The Busbys' complaint alleging that Menards breached its duties "by, including but not limited to failing to exercise reasonable care in stacking its pallets, failing to properly secure its pallets, failing to properly maintain its pallets, and failing to maintain its facility in a safe and reasonable manner."). For that reason alone, the court could decline to consider Menard's expert testimony argument. *See United States v. Darden*, 915 F.3d 579, 586 n.9 (8th Cir. 2019) (explaining that arguments raised for the first time in a reply brief are generally not considered); *Mahaney v. Warren Cnty.*, 206 F.3d 770, 771 n.2 (8th Cir. 2000) ("Claims not raised in an initial brief are waived, and we generally do not consider issues raised for the first time . . . in a reply brief.").

In any event, the argument fails on the merits. South Dakota requires expert testimony in a negligence action only when the subject matter at issue "is not within the common knowledge or experience of a lay person." *Sheard v. Hattum*, 965 N.W.2d 134, 142 (S.D. 2021); *see also Luther v. City of Winner*, 674 N.W.2d 339, 344 (S.D. 2004) ("There is no requirement that a party produce expert testimony when the question is within a layperson's knowledge."). "Unless the issues are unusually complex," negligence claims may be proved through lay testimony and circumstantial evidence. *See Mid-Western Elec., Inc. v. DeWild Grant Reckert & Assoc. Co.*, 500 N.W.2d 250, 255 (S.D. 1993).

In *Luther v. City of Winner*, 674 N.W.2d 339 (S.D. 2004), the South Dakota Supreme Court analyzed the different duties owed by two defendants

20

affecting whether expert testimony was required. There, the plaintiff sued an engineer and the City of Winner for negligence after the plaintiff missed a step and fell on the city's sidewalk. *Luther*, 674 N.W.2d at 342-43. The South Dakota Supreme Court found that "the typical lay person would have no idea how to design and construct a sidewalk under the conditions on Winner's Main Street." *Id.* at 346. Thus, the court concluded that the plaintiff was required to provide expert testimony on the professional standard of care for an engineer regarding engineer defendant's design and construction of the sidewalk. *Id.* But the court also found that the plaintiff did not have to provide expert testimony on its negligence claim against the City of Winner because the city owed plaintiff the duty of a landowner—"a duty of ordinary care for the benefit of the invitee's safety"—not the professional duty of an engineer. *See id.* at 347.

Similar to the facts in *Luther*, the duty arising here is Menard's alleged negligence as a landowner toward an invitee. This case does not present the type of specialized or technical subject matter that requires expert assistance as Menards suggests, *see* Docket 44 at 5-14, or require that a professional duty of care be established, *see, e.g.*, *RTI, LLC v. Pro Eng'g, Inc.*, 28 N.W.3d 167, 180-83 (S.D. 2025) (requiring expert testimony to show an architect's standard of care and "whether a particular ceiling was installed correctly, or what caused or contributed to the ceiling collapse"). The Busbys do not allege that Menards violated an engineering standard, a scientific principle, or a highly technical or professional industry regulation. Nor do they contend that the jury must evaluate complicated calculations regarding structural loads, product design,

21

or industrial machinery. The Busbys' claim is considerably simpler. They allege that Menards stored large bundles of insulation in a customer-accessible area, that the insulation was stacked in an unstable manner, that customers routinely moved merchandise in the area, that Menards lacked any policy requiring periodic inspection or restacking of disturbed merchandise, and that a stack of insulation ultimately fell onto Busby. *See* Docket 42 at 12. Those matters are well within the understanding of ordinary jurors.

The record itself demonstrates as much. Menards maintains a written policy governing the stacking of insulation. Docket 41 ¶ 9; *see also* Docket 43-6. Employees are instructed not to stack insulation above the side racks and are directed to ensure that the insulation remains stable and self-supporting. Docket 33 ¶¶ 24, 26. Employees testified that products occasionally fall when improperly stacked or when disturbed by customers or forklifts. Docket 41 ¶¶ 5, 7; *see also* Docket 43-5 at 5-6, 14. Jurors require no specialized training to evaluate that testimony. Whether a stack of heavy insulation appeared stable, whether Menards exercised reasonable care in maintaining the stack, and whether the condition of the stack created an unreasonable risk of harm are matters within the common knowledge and experience of laypersons. *See Sheard,* 965 N.W.2d at 143; *Luther,* 674 N.W.2d at 344. A jury does not require specialized expertise to evaluate the safety of a stack of merchandise displayed in a customer-accessible area.

The same is true of causation. Menards argues that expert testimony is necessary because neither party knows precisely why the insulation fell. But

the absence of direct evidence identifying the exact mechanism of failure does not automatically require expert testimony. Negligence and causation may be established through circumstantial evidence. *Fajardo v. Cammack*, 322 N.W.2d 873, 876 (S.D. 1982); *Parham v. Dell Rapids Twp.*, 122 N.W.2d 548, 552 (S.D. 1963). Here, a jury could consider evidence that the stack appeared uneven, that it was unsecured, that customers regularly manipulated merchandise in the yard, that Menards had no inspection schedule for disturbed products, and that the stack fell onto Busby while he was retrieving nearby insulation. Whether those facts support a finding of causation is a question for the jury. *See Long*, 736 F. Supp. 3d at 695.

Thus, the court concludes that the Busbys' negligence claim involves matters within the common knowledge and experience of lay jurors. Because South Dakota law does not require expert testimony under such circumstances, Menards is not entitled to summary judgment based on the Busbys' failure to designate an expert witness. As such, the court denies Menard's motion for summary judgment on the grounds that the Busbys have failed to provide expert testimony to support its negligence claim. *See also Thomas v. St. Mary's Roman Catholic Church*, 283 N.W.2d 254, 257 (S.D. 1979) (concluding that expert testimony was not required because the plaintiff's negligence claim concerned whether defendant breached the duty of reasonable care it owed as a landowner to plaintiff, a business invitee, and not whether a gymnasium was designed with reasonable care); *Krasniqi v. Holdhal, Inc.*, 2022 WL 612660, at *5 (D.S.D. Mar. 2, 2022) (finding that expert testimony was not

23

required where a juror "will be able to understand whether [the defendant] exercised ordinary care in maintaining its premises in a reasonably safe condition, including the maintenance of its dock plate").

## II. Contributory Negligence and Assumption of the Risk

Alternatively, Menards argues that even if it owed Busby a duty, because Busby was contributorily negligent by failing to warn Menards about the condition of the insulation stack, he is barred from recovering on his negligence claim. Docket 38 at 13-14. Menards also argues that Busby is barred from recovering because he assumed the risk of "working near the stack of insulation that fell on him." *Id.* at 14-16. In response, the Busbys deny that Busby was contributorily negligent or assumed the risk and instead contend that these are matters for a jury to decide. Docket 42 at 13-16.

"Contributory negligence is a 'breach of a duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause.'" *Johnson v. Armfield*, 672 N.W.2d 478, 481 (S.D. 2003) (quoting *Starnes v. Stofferahn*, 160 N.W.2d 421, 426 (1968)). Under South Dakota law, a plaintiff is barred from recovering if his own negligence is more than "slight" in comparison to the negligence of the defendant. SDCL § 20-9-2; *see also Westover v. E. River Elec. Power Coop., Inc.*, 488 N.W.2d 892, 896 (S.D. 1992). Slight is defined as "small of its kind or in amount; scanty, meager." *Lindholm v. BMW of N. Am., LLC*, 202 F. Supp. 3d 1082, 1100 (D.S.D. 2016).

24

Similarly, assumption of the risk is an affirmative defense that bars all recovery on a negligence claim. *Rantapaa v. Black Hills Chair Lift Co.*, 633 N.W.2d 196, 204 (S.D. 2001). To establish assumption of the risk, Menards must show that Busby "(1) had actual or constructive knowledge of the risk; (2) had an appreciation of its character; and (3) voluntarily accepted the risk, having had the time, knowledge, and experience to make an intelligent choice." *Pettry v. Rapid City Sch. Dist.*, 630 N.W.2d 705, 708 (S.D. 2001). Further, because the first two prongs are generally questions for the jury, the court can only decide these issues if "it is clear that any person in [plaintiff's] position must have understood the danger." *Ray v. Downes*, 576 N.W.2d 896, 899 (S.D. 1998).

Here, the court finds that summary judgment on the issues of assumption of the risk and contributory negligence is inappropriate. As a preliminary matter, the court reiterates that "questions of negligence, contributory negligence and assumption of the risk are for the jury in all but the rarest cases so long as there is evidence to support the issues." *Stone*, 741 N.W.2d at 770 (quotation omitted). Further, as indicated above, there is a genuine issue of material fact as to whether Busby fully appreciated the danger posed by the "uneven" stack of insulation. Thus, viewing the evidence in the light most favorable to Busby, the court finds that a reasonable jury could find that Busby did not assume the risk of having the stack of insulation fall upon him. A reasonable jury could conclude that Busby, who had loaded his own product, including insulation, at Menards countless times without incident,

25

*see* Docket 34-1 at 6, 12 (Busby testifying that he had retrieved the same insulation products before without incident and that he had never been warned that he ever improperly loaded Menard's product), did not appreciate or voluntarily accept the risk that the tall stack of insulation may spontaneously fall on him.

Nor can this court conclude as a matter of law that Busby's negligence was more than slight when compared to Menard's negligence. Viewing the evidence in the light most favorable to Busby, Menards improperly stacked or failed to maintain the stack of insulation in its proper form in violation of its Policy No. 99. Further, Menard's employees did not see Busby do anything incorrectly while he was loading the insulation into his trailer. Docket 41 ¶¶ 22-24; *see also* Docket 43-2 at 6; Docket 43-3 at 14. The jury will have to decide how Busby's alleged contributory negligence compares to Menard's alleged negligence. *See Westover*, 488 N.W.2d at 900 (holding trial court properly refused to find that plaintiff's contributory negligence was more than slight as a matter of law when the defendant failed to follow its own safety procedures and failed to provide supervision and warnings to the plaintiff). Thus, the court denies Menard's motion for summary judgment based upon assumption of the risk and contributory negligence.

## CONCLUSION

Based on the foregoing, it is

ORDERED that Menard's motion for summary judgment (Docket 32) is denied. It is

FURTHER ORDERED that Menard's motion for a protective order (Docket 45) is denied as moot.

Dated June 24, 2026.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

27